UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 26-cv-22055-JB

LEONARD ZAPATA PITA,

        Petitioner,

v.

WARDEN, KROME SERVICE
PROCESSING CENTER, *et al.*,

        Defendants.

_____/

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

**THIS CAUSE** comes before the Court upon Petitioner Leonard Zapata Pita's Verified Petition for Writ of Habeas Corpus (the "Petition"). ECF No. [1]. Respondents filed a Response in opposition to the Petition. ECF No. [6]. No reply has been filed and the time to do so has passed. In addition, pursuant to the Court's Order, ECF No. [12], Respondents filed supplemental briefing addressing the applicability of *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199 (11th Cir. 2016), ECF No. [13]. Upon due consideration of the parties' submissions, the pertinent portions of the record, and the applicable law, for the reasons explained below, the Petition is **DENIED**.

**I.    BACKGROUND**

Petitioner is a Cuban citizen who was paroled into the United States near Miami, Florida on August 22, 1995. ECF No. [8-1] at 2. At that time, Petitioner was pending an adjustment of status for a period of two years but never adjusted his status to that of Lawful Permanent Resident and has no pending applications at this time. *Id.*

1

On February 4, 2025, United States Immigration and Customs Enforcement ("ICE") and Removal Operations ("ERO") encountered Petitioner at the Turner Guilford Knight Correctional Center in Miami, Florida and thereafter issued Petitioner an immigration detainer.  ECF Nos. [6-8] at ¶ 9–10, [8-1] at 2, [8-2].  On December 2, 2025, Petitioner was taken into ICE custody.  ECF No. [6-8] at ¶ 11.  On January 13, 2026, the Department of Homeland Security ("DHS") filed a Notice to Appear ("NTA") with the Executive Office for Immigration Review ("EOIR").  ECF No. [6-8] at ¶ 12.  The NTA classifies Petitioner as an "arriving alien" and charges him with inadmissibility under section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA").  *Id.*; ECF No. [8-6].  Petitioner is currently detained at the Krome Service Processing Center in Miami, Florida.  ECF Nos. [6-8] at ¶ 13, [8-4].

On March 26, 2026, Petitioner filed the instant Petition.  ECF No. [1].  Petitioner argues that he is wrongfully classified as a detainee subject to mandatory detention under 28 U.S.C. § 1225, as opposed to a detainee under 28 U.S.C. § 1226, which entitles him an individualized bond hearing.  *Id.* at 7.  Petitioner also challenges the constitutionally of his continued detention, citing *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).  *Id.* at 6.  Petitioner asks the Court to order his immediate release from custody "either without bond or with bond in a reasonable amount…."  *Id.* at 7.

Respondents filed its Response to the Petition.  ECF No. [6].  Respondents argue that the Court lacks jurisdiction over the Petition under 8 U.S.C. §§ 1252(g) and (b)(9).  *Id.* at 9–14.  Respondents further argue that Petitioner is an arriving alien subject to mandatory detention without bond under 8 U.S.C. § 1225(b).  *Id.* at 3–9.  Respondents also argue that

Petitioner's due process claim fails because he is being detained pursuant to valid statutory authority.  *Id.* at 6.  Furthermore, in its Supplemental Briefing, Respondents argue that Petitioner's detention does not violate due process under *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199 (11th Cir. 2016) because, among other reasons, Petitioner has only been detained since December 2, 2025.  ECF No. [13] at 3–6.  Finally, Respondents argue that Petitioner failed to exhaust his administrative remedies.  ECF No. [6] at 14.

## II.   ANALYSIS

District courts have the authority to grant writs of habeas corpus.  *See* 28 U.S.C. § 2241(a).  Habeas corpus is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted).  A writ may be issued to a petitioner who shows that he is being held in custody in violation of the Constitution or federal law.  *See* 28 U.S.C. § 2241(c)(3).

### A. <u>Jurisdiction</u>

As mentioned, Respondents argue that the Court lacks jurisdiction over the Petition under 8 U.S.C. §§ 1252(g) and (b)(9).  ECF No. [6] at 9–14.

#### 1.  8 U.S.C. § 1252(g)

Section 1252 is "Congress's comprehensive scheme for judicial review of removal orders."  *Canal A Media Holding, LLC v. USCIS*, 964 F.3d 1250, 1256–57 (11th Cir. 2020). To be sure, this provision bars judicial review over "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien[.]" 8 U.S.C. § 1252(g).  It "is specifically directed at the deconstruction, fragmentation, and hence

prolongation of removal proceedings." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999).  That said, "1252(g) is not to be construed broadly as a 'zipper' clause applying to the full universe of deportation-related claims, but instead as applying narrowly to only the three 'discrete' governmental actions enumerated in that subsection." *Wallace v. Sec'y, U.S. Dep't of Homeland Sec.*, 616 F. App'x 958, 960 (11th Cir. 2015) (citing *A.A.D.C.*, 525 U.S. at 472–73).  "And although many other decisions or actions may be part of the deportation process, only claims that arise from one of the covered actions are excluded from [a court's] review. . . ." *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1272 (11th Cir. 2021) (internal citations and quotations omitted).

Here, Petitioner's claim does not implicate the Attorney General's decision to commence proceedings, adjudicate cases, or execute removal orders.  Rather, Petitioner challenges the legality of his detention.  Such claim is reviewable.  *See Canal A Media Holding, LLC,* 964 F.3d at 1257–58 (claim was not barred by § 1252(g) where action did not fall into one of three categories as "[w]hen asking if a claim is barred by § 1252(g), courts must focus on the action being challenged."); *see also Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411, at *6 (D. Minn. Aug. 15, 2025) (petitioner's due process challenge was not barred by § 1252(g) as it did not "challenge the actions of Respondents in commencing proceedings, adjudicating cases, or executing removal orders."); *Vazquez v. Feeley,* No. 25-cv-01542, 2025 WL 2676082, at *8 (D. Nev. Sept. 17, 2025) ("[B]ecause Petitioner challenges the lawfulness of his detention during the pendency of his removal proceedings, it is not a challenge to one of the 'three discrete events along the road to deportation' that § 1252(g) applies to."); *Leal-Hernandez v. Noem,* No. 25-cv-02428, 2025 WL 2430025, at  *5 (D. Md.

Aug. 24, 2025) ("Petition[er] mounts a challenge solely to his continued custody. None of the cases the Government relies on pertain to cases in which a petitioner . . . pursued judicial review of his allegedly unconstitutional custody. In accordance with Supreme Court precedent and the plain language of the text, § 1252(g) does not bar [jurisdiction]."); *Sanchez v. LaRose*, No. 25-cv-2396, 2025 WL 2770629, at *2 (S.D. Cal. Sept. 26, 2025) ("Petitioner seeks only review of the legality of her detention, which does not require judicial intervention into the Attorney General's decisions to commence proceedings, adjudicate cases, and execute removal orders. . . . Adopting [the government's] interpretation of 8 U.S.C. § 1252(g) . . . would eliminate judicial review of immigration detainee's claims of unlawful detention[.]"); *Campos Leon v. Forestal*, No. 25-cv-01774, 2025 WL 2694763, at *1–2 (rejecting respondents' § 1252(g) argument and concluding that the court had jurisdiction to hear habeas petition challenging DHS' refusal to abide by the IJ's bond order).

Accordingly, section 1252(g) does not prevent this Court from exercising jurisdiction over the Petition.

### 2. 8 U.S.C. § 1252(b)(9)

Under Section 1252(b)(9), the Courts of Appeals are the exclusive forum for judicial review "of all questions of law . . . including interpretation and application of constitutional and statutory provisions, arising from any action taken . . . to remove an alien from the United States." 8 U.S.C. § 1252(b)(9). Respondents argue that "[t]he fact that Petitioner is challenging the basis of his detention is enough to trigger § 1252(b)(9) because 'detention *is* an "action taken … to remove" an alien.'" ECF No. [6] at 14. The Court does not agree.

This position was squarely addressed in *Jennings v. Rodriguez*, where the United States Supreme Court held that "questions of law" regarding whether "certain statutory provisions require detention without a bond hearing" do not "arise from" the decision to remove an alien from the country as set forth in section 1252(b)(9). *Jennings*, 583 U.S. 281, 292–294 (2018). The Supreme Court rejected an "expansive interpretation of § 1252(b)(9)," explaining that even if "[t]he 'questions of law and fact' . . . could be said to 'aris[e] from' actions taken to remove the aliens in the sense that the aliens' injuries would never have occurred if they had not been placed in detention," this "expansive interpretation of § 1252(b)(9) would lead to staggering results." *Id.*

Moreover, section 1252(b)(9) "does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020). Here, Petitioner is not bringing any such challenge. Petitioner is challenging his mandatory detention under section 1225(b), and his entitlement to a bond hearing. For these reasons, the Court concludes that section 1252(b)(9) does not divest the Court of its jurisdiction to consider the Petition.

## B. **Petitioner is Subject to Mandatory Detention Under Section 1225**

Section 1225 governs the inspection, detention, and removal of applicants for admission. *See* 8 U.S.C. § 1225 *et seq.* Applicants for admission are defined as noncitizens "present in the United States who ha[ve] not been admitted" or those "arriv[ing] in the United States." *Id.* Section 1182(a)(7) provides that an individual who "at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry

6

permit, border crossing card, or other valid entry document required by the [INA], and a valid unexpired passport, or other suitable travel document . . . " is ineligible to be admitted to the United States.   8 U.S.C. § 1182(a)(7).   As relevant here, an individual properly characterized "under section 1182(a)(6)(C) or 1182(a)(7)" by an immigration officer shall be removed from the United States "without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of [the INA] or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i).   Individuals detained pursuant to Section 1225(b)(1) are subject to mandatory detention without an opportunity for a bond hearing. *See Rosabal Blanco v. Bondi*, No. 26-cv-00051, 2026 WL 2143696, at * 3 (M.D. Fla. Jan. 28, 2026) ("A noncitizen subject to expedited removal under § 1225(b)(1) is subject to mandatory detention); *Jennings*, 583 U.S. at 302 ("In sum, §§ 1225(b)(1) and (b)(2) mandate detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin.").

That is the situation here.   The NTA that DHS issued to Petitioner upon their encounter on February 5, 2025 classified Petitioner as an "arriving alien" and charged him with inadmissibility under Section 212(a)(7)(A)(i)(I) of the INA, which is codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I), "as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the [INA], and a valid unexpired passport, or other suitable travel document . . . ." ECF No. [8-6].

Although Petitioner was initially paroled into the United States, his parole was well expired by the time he was re-apprehended in February 2025.  He is thus properly classified

under the same legal status as when he first entered the United States in August 1995.  *See Jennings*, 583 U.S. at 288 ("[W]hen the purpose of the parole has been served, 'the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'").

As such, Petitioner's initial release on parole did not change his initial status as an "arriving alien."  He is therefore subject to mandatory detention under § 1225(b)(1) and is not entitled to a bond hearing.

### C.  **Petitioner's Continued Detention Does Not Violate Due Process**

Petitioner argues that his detention violates due process, citing to the Supreme Court's opinion in *Zadvydas v. Davis*, 533 U.S. 678 (2001).  ECF No. [1] at 6.  In *Zadvydas*, the Supreme Court considered the petitions of two resident aliens who challenged the constitutionality of their detention pursuant to 8 U.S.C. § 1231(a)(6), which permits the Government to detain an alien subject to a final order of removal beyond the 90-day statutory removal period set forth in § 1231(a)(1).  *Id*. at 682.  Although no country was willing to accept either alien once they were ordered removed, the Government continued to detain them after the expiration of § 1231(a)(1)'s 90-day removal period.  *Id*. at 684-86. The Supreme Court held that a detainee may file a petition for writ of habeas corpus to challenge the reasonableness of their continued detention when the Government is unable to effectuate removal within the 90-day removal period.  *Id*. at 687.

The Supreme Court further held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute" because "[a] statute

permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.* at 690, 699.   In so ruling, the Supreme Court explained that it is presumptively reasonable for the Government to detain an individual for a period of six months while it effectuates that individual's removal.  *Id.* at 701.  However, after this six-month period, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute" and grant the petition for writ of habeas corpus, "conditioned on any of the various forms of supervised release that are appropriate in the circumstances . . . ."  *Id.* at 699–700.

However, the procedural posture of *Zadvydas* is different than one present here, as *Zadvydas* involved a "post-removal-period detention statute."   *Id.* at 683.   Because Petitioner is not in post-removal proceedings, *Zadvydas* does not provide him relief.  *See Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) (explaining that to state a valid claim under *Zadvydas*, a petitioner must show (1) "*post removal order detention* in excess of six months," and (2) "a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" (emphasis added));  *Guerra v. Director Fla. Soft Side Detention Ctr.*, No. 26-cv-756, 2026 WL 936453, at *4 (M.D. Fla. Apr. 7, 2026) ("*Zadvydas* provides [petitioner] no help here for a simple and fundamental reason: he is detained under a completely different statutory scheme.").

In *Denmore v. Kim*, the Supreme Court addressed the constitutionality of the "detention of deportable criminal aliens *pending their removal proceedings*"—the procedural posture at issue here.   538 U.S. 510, 527 (2003).   Finding "[d]etention during removal proceedings [to be] a constitutionally permissible part of that process," the Court considered

and concluded that individuals like Petitioner could be detained without any finding as to whether they posed a flight risk or danger to society." *Id.* at 524–25.  While the Court is aware that Petitioner has spent upwards of seven months in detention, an "alien's detention without a bond hearing [ ] often become[s] unreasonable by the one-year mark, depending on the facts of the case." *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1217 (11th Cir. 2016), *vacated by Sopo v. U.S. Att'y Gen.*, 890 F.3d 952 (11th Cir. 2018).  Accordingly, the Court declines, at this time, to afford Petitioner with any relief.

### D. Exhaustion of Remedies

Respondents argue that the Court should dismiss the Petitioner because Petitioner has not exhausted his administrative remedies, as "Petitioner has failed to request a bond hearing before an IJ.  ECF No. [6] at 14.  Because the Court has already found that the Petition is denied for the reasons stated above, the Court declines to reach the issue of exhaustion.

### III.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1.      Petitioner Leonard Zapata Pita's Verified Petition for Writ of Habeas Corpus, ECF No. [1], is **DENIED.**

2.      The Clerk is directed to CLOSE this case.

**DONE AND ORDERED** in Miami, Florida, this 6th day of July, 2026.

_____

**JACQUELINE BECERRA**
**UNITED STATES DISTRICT JUDGE**

10